UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff | ) | Civil Action Number: 06-1096-JTM |
| | ) | |
| v. | ) | |
| | ) | |
| CATERPILLAR, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CAMOPLAST ROCKLAND, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

CONSENT DECREE

## TABLE OF CONTENTS

I.     JURISDICTION AND VENUE .......................................................................... 2

II.    APPLICABILITY ........................................................................................... 2

III.   FACTUAL BACKGROUND .............................................................................. 3

IV.    COMPLIANCE PROGRAM .............................................................................. 4

       A.     INSTALLATION OF
              CONTROLS............................................................................................4

       B.     PERMITTING AND MODIFICATIONS .............................................. 5

       C.     EMISSION
              LIMITS.................................................................................................5

       D.     DEMONSTRATION OF COMPLIANCE...............................................6

       E.     RECORDKEEPING AND REPORTING ........................................... .6

V.     CIVIL PENALTY ......................................................................................... .6

VI.    STIPULATED PENALTIES ........................................................................ .8

VII    RIGHT OF ENTRY ...................................................................................... .10

VIII.  FORCE MAJEURE ..................................................................................... 10

IX.    DISPUTE RESOLUTION ............................................................................. 13

X.     GENERAL PROVISIONS ............................................................................ 14

XI.    TERMINATION ......................................................................................... 18

<u>CONSENT DECREE</u>

WHEREAS, Plaintiff, the United States of America ("Plaintiff" or "the United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has, simultaneously with lodging of this Consent Decree, filed a Complaint alleging that Defendant, Caterpillar, Inc. ("Caterpillar") commenced construction of a major source of hazardous air pollutants and/or modified a major source of hazardous air pollutants in violation of the Section 112(g) of the Clean Air Act (the "Act"), 42 U.S.C. § 7412(g), and the regulations promulgated thereunder and codified at 40 C.F.R. Part 63, Subpart B, by failing to apply for a case by case determination of the maximum achievable control technology emission limitation for a new source.

WHEREAS, Camoplast Rockland, Ltd. ("Camoplast") purchased the Facility from Caterpillar on December 30, 2002;

WHEREAS, Caterpillar and Camoplast have worked cooperatively with EPA regarding the alleged violations and voluntarily provided requested information without information requests under Section 114 of the Act, 42 U.S.C. § 7414;

WHEREAS, the Defendants do not admit the violations alleged in the Complaint or this Consent Decree;

WHEREAS, the United States and the Defendants have agreed that settlement of this action is in the best interest of the parties and in the public interest, and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter; and

WHEREAS, Plaintiff and Defendants consent to entry of this Consent Decree without trial of any issues;

NOW, THEREFORE, without any admission of fact or law, and without any admission of the violations alleged in the Complaint, it is hereby ORDERED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      The Complaint states a claim upon which relief can be granted against the Defendants under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1355.  This Court has jurisdiction of the subject matter herein and over the parties consenting hereto pursuant to 28 U.S.C. § 1345 and pursuant to Section 113 of the Act, 42 U.S.C. § 7413.  Venue is proper under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c).

## II. APPLICABILITY

2.      The provisions of this Consent Decree shall apply to and be binding upon the Plaintiff and upon the Defendants as well as the Defendants' officers, employees, agents, successors and assigns.  In the event Camoplast proposes to sell or transfer the Facility (defined herein in Paragraph 3) subject to this Consent Decree before termination of the Consent Decree, it shall advise such proposed purchaser or successor-in-interest in writing of the existence of this Consent Decree, and shall send a copy of such written notification by certified mail, return receipt requested, to the EPA Regional Administrator for Region VII, Attn: Richard Tripp/Kevin Barthol, before such sale or transfer, if possible, but no later than the closing date of such sale or transfer.  Camoplast shall provide a copy of the Consent Decree to the proposed purchaser or successor-in-interest.  In the event Camoplast sells or otherwise assigns any of its rights, title, or interest in the Facility, prior to termination of the Consent Decree, the conveyance shall not release the Defendants from any obligation imposed by this Consent Decree unless the party to

2

whom the right, title or interest has been transferred agrees in writing to fulfill the obligations of this Consent Decree.  The Defendants agree not to oppose entry of this Consent Decree and agree not to contest the validity of this Consent Decree in any subsequent proceeding to implement or enforce its terms.

### III.  FACTUAL BACKGROUND AND APPLICABLE DEFINITIONS

3.     (a).     Caterpillar, Inc. is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e), and the federal and state regulations promulgated pursuant to the Act.

(b).     Camoplast Rockland, Ltd. is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e), and the federal and state regulations promulgated pursuant to the Act.

(c).     Caterpillar constructed a plant in 1999 and 2000, located in Emporia, Kansas for the manufacture of rubber belts and the coating of metal wheels with rubber (the "Facility").  Camoplast purchased the Facility on December 30, 2002, and has operated the Facility since that time.  The Facility manufactures agricultural rubber tractor treads and associated wheels.  As part of the process of coating metal wheels, the Facility applies adhesive to metal surfaces to promote rubber to metal adhesion.  The adhesive used in this process contains both volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs").  The adhesive is preheated and applied to metal parts, which are also preheated to allow for quicker adhesive application.  The source of VOC and HAP emissions is the application of the adhesive and coating of metal parts.  This process is hereafter referred to as the "Wheel Line."  Another manufacturing process involves incidental use of adhesive that contains both VOCs and HAPs to promote temporary bonding of rubber to metal mandrels during the construction of rubber tractor treads.  This process is referred to hereafter as the "Belt Line."  The Plaintiff alleges that in the course of these manufacturing activities the Facility emits significant

3

quantities of volatile organic compounds ("VOCs"), and hazardous air pollutants ("HAPs"), including ethyl benzene, toluene, and xylene, listed under Section 112(b)(1), 42 U.S.C. § 7412(b)(1) of the Act.

(d).     Plaintiff alleges that the Facility is a "major source" as defined by Section 112(a)(1) of the Act, 42 U.S.C. § 7412(a)(1), and the federal and state regulations promulgated pursuant to the Act.

(e).     Definitions: Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the Act, and the federal and state regulations promulgated pursuant to the Act.

## IV.  COMPLIANCE PROGRAM REQUIREMENT

### A.     INSTALLATION OF CONTROLS AND APPLICABLE EMISSION LIMITS

4.     Camoplast shall implement a program of compliance at the Facility to attain the emission levels required under the National Emission Standard for Hazardous Air Pollutants for Surface Coating of Miscellaneous Metal Parts and Products, 40 C.F.R. Part 63, Subpart MMMM, ("Subpart MMMM") as it applies to a new source for the Wheel Line.  Camoplast shall install a Regenerative Thermal Oxidizer ("RTO") to control emissions of VOCs and HAPs to comply with Subpart MMMM on the Wheel Line.  Camoplast shall also install a capture system to collect VOC and HAP vapors from the Wheel Line.  Camoplast agrees to meet the new source standard in Subpart MMMM for the Wheel Line for a period of five years from the date of start up of the RTO.  The Belt Line may remain uncontrolled.

5.      Camoplast shall complete installation of the RTO within one hundred and eighty (180) days of the issuance of the construction approval for the RTO by the Kansas Department of Health and the Environment.

      B.      <u>PERMITTING AND MODIFICATIONS</u>

6.      On May 6, 2005, Camoplast submitted an application to the Kansas Department of Health and the Environment ("KDHE") for a federally-enforceable construction permit to allow the construction of a Permanent Total Enclosure for the Wheel Line and an RTO to treat HAP emissions from the Wheel Line portion of the Facility.  Camoplast included in its application the emission limits for a new source under 40 C.F.R. Part 63, Subpart MMMM.  These emission limits shall remain applicable to the Facility for at least five years from the date of start up of the RTO and capture system.

7.      By no later than sixty (60) days following start-up of the RTO, Camoplast shall apply to KDHE for modification to its Title V permit to incorporate the emission limits required under Subpart MMMM for a new source.

      C.      <u>EMISSION LIMITS</u>

8.      Beginning no later than sixty (60) days following the start up of the RTO, Camoplast shall begin the twelve (12) month compliance period for complying with the new rubber-to-metal coating affected source limits.  Camoplast shall operate the Wheel Line to limit organic HAP emissions to no more than 0.81 kg (6.8lb) organic HAP per liter (gallon) coating solids used during each twelve (12) month compliance period as required by 40 C.F.R. § 63.3890(a)(4).  The Belt Line may remain uncontrolled.

9.      Beginning no later than one hundred twenty (120) days following the start up of the RTO, Camoplast shall continually operate the Facility so as not to exceed the source wide emission caps of 10 tons per year ("tpy") for any single HAP or 25 tpy for all HAPs.

D.      DEMONSTRATION OF COMPLIANCE

10.     By no later than one hundred twenty (120) days following start up of the RTO, Camoplast shall demonstrate compliance with the emission limits required by this Consent Decree and Subpart MMMM.  Camoplast shall complete a capture and control test.

11.     By no later than one hundred twenty (120) days following the start-up of the RTO, Camoplast shall demonstrate through an initial performance test that it has met the required destruction efficiency and/or emission limit.

12.     All performance testing protocol shall be submitted to KDHE and EPA for review at least sixty (60) days prior to testing.  Within sixty (60) days of the test date, test results shall be submitted to KDHE and EPA.

E.      RECORDKEEPING AND REPORTING REQUIREMENTS

13.     Camoplast shall maintain records and submit reports as required by the NESHAP, 40 C.F.R., Part 63, Subpart MMMM.

V. CIVIL PENALTY

14.      Within thirty (30) calendar days of entry of this Consent Decree, Caterpillar shall pay to the Plaintiff a civil penalty pursuant to Section 113 of the Act, 42 U.S.C. § 7413, in the amount of $300,000.  Pursuant to the Act, the following factors were considered in determining a civil penalty, in addition to other factors as justice may require, the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good

6

faith efforts to comply, the duration of the violation, payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

15.     The penalty, $300,000, shall be paid to the United States by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing the USAO File Number and DOJ Case Number 90-5-2-1-08552, and the civil action case name and case number of the District of Kansas.  The costs of such EFT shall be Caterpillar's responsibility.  Payment shall be made in accordance with instructions provided to Caterpillar by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Kansas.  Any funds received after 11:00 a.m. (EST) shall be credited on the next business day. Caterpillar shall provide notice of payment, referencing the USAO File Number and DOJ Case Number 90-5-2-1-8552, and the civil action case name and case number, to the Department of Justice and to EPA, as provided in Paragraph 44 ("Notice").

16.     Caterpillar shall pay statutory interest on any over due civil penalty or stipulated penalty amount at the rate specified in 31 U.S.C. § 3717.  Upon entry of this Consent Decree, this Consent Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001-3308, and other applicable federal and state authority.  The Plaintiff shall be deemed a judgment creditor for purpose of collection of any unpaid amounts of the civil and stipulated penalties and interest.

17.     No amount of the $300,000 civil penalty to be paid by Caterpillar shall be used to reduce their federal or state tax obligations.

## VI.  STIPULATED PENALTIES

18.    Camoplast shall pay stipulated penalties in the amounts set forth below to the Plaintiff for the following:

(a).    for each day of failure to meet the deadlines for installation of the RTO:

| | |
|---|---|
| 1st through 30th day after deadline | $250 |
| 31st through 60th day after deadline | $500 |
| Beyond the 60th day | $1,000 |

(b).    for each day of failure to meet the deadlines for applying for permits under Paragraphs 6 and 7:

| | |
|---|---|
| 1st through 30th day after deadline | $250 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day | $1,000 |

(c).    for failure to conduct a performance test as required by Paragraphs 10 and 11, per day:

| | |
|---|---|
| 1st through 30th day after deadline | $250 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day | $1,000 |

(d).    for failure to pay or escrow stipulated penalties, as specified in Paragraphs 19 and 20 of this section, $500 per day per penalty demand.

(e).    for failure to notify the Plaintiff pursuant to Paragraph 2 of Camoplast's sale or transfer of the Facility, $250 per day.

8

19.     Camoplast shall pay stipulated penalties upon written demand by the Plaintiff no later than thirty (30) days after Camoplast receives such demand.  Stipulated penalties shall be paid to the Plaintiff in the manner set forth in Part V ("Civil Penalty") of this Consent Decree.

20.     Should Camoplast dispute the obligation to pay part or all of a stipulated penalty, they may avoid the imposition of the stipulated penalty for failure to pay a penalty due to the Plaintiff by placing the disputed amount demanded by the Plaintiff, not to exceed $20,000 for any given event or related series of events, in a commercial escrow account pending resolution of the matter and by invoking the Dispute Resolution provisions of Part IX within the time provided in Paragraph 19 for payment of stipulated penalties.  If the dispute is thereafter resolved in Camoplast's favor, the escrowed amount plus accrued interest shall be returned to Camoplast. Otherwise the Plaintiff shall be entitled to the escrowed amount that was determined to be due by the Court plus the interest that has accrued on such amount, with the balance, if any, returned to Camoplast.

21.     The Plaintiff reserves the right to pursue any other remedies for violations of this Consent Decree to which it is entitled.  The Plaintiff will not seek stipulated penalties and civil or administrative penalties for the same violation of the Consent Decree.

22.  The Plaintiff reserves the right to waive any claim for stipulated penalties under this Consent Decree.

## VII.  RIGHT OF ENTRY

23.     Any authorized agent or representative of the EPA or KDHE, upon presentation of proper credentials and in compliance with the Facility's safety requirements, shall have a right

of entry upon the premises of the Facility identified herein at Paragraph 3(c) at any reasonable time for the purpose of monitoring compliance with the provisions of this Consent Decree, including inspecting equipment, and inspecting and copying all records maintained by the Defendants required by this Consent Decree.  Nothing in this Consent Decree shall limit the authority of EPA and KDHE to conduct tests and inspections under Section 114 of the Act, 42 U.S.C. § 7414, and or any other applicable federal or state law.

## VIII.  FORCE MAJEURE

24.     If any event occurs which causes or may cause a delay or impediment to performance in complying with any provision of this Consent Decree, Camoplast shall notify the Plaintiff in writing as soon as practicable, but in any event within twenty (20) business days of when Camoplast first knew of the event or should have known of the event by the exercise of due diligence.  In this notice Camoplast shall specifically reference this Paragraph of this Consent Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, and the measures taken or to be taken by Camoplast to prevent or minimize the delay and the schedule by which those measures will be implemented.  Camoplast shall adopt all reasonable measures to avoid or minimize such delays.

25.     Failure by Camoplast to provide notice to Plaintiff of an event which causes or may cause a delay or impediment to performance shall render this Part VIII voidable by the Plaintiff as to the specific event for which the Camoplast has failed to comply with such notice requirement, and, if voided, is of no effect as to the particular event involved.

26.     The Plaintiff shall notify Camoplast in writing regarding the claim of a delay or impediment to performance as soon as practicable, but in any event within thirty (30) days of

receipt of the Force Majeure notice provided under Paragraph 24.  If the Plaintiff agrees that the delay or impediment to performance has been or will be caused by circumstances beyond the control of Camoplast, including any entity controlled by Camoplast, and that Camoplast could not have prevented the delay by the exercise of due diligence, the parties shall stipulate to an extension of the required deadline(s) for all requirement(s) affected by the delay by a period equivalent to the delay actually caused by such circumstances.  Neither Defendant shall be liable for stipulated penalties for the period of any such delay.

27.     If the Plaintiff does not accept Camoplast's claim that a delay or impediment to performance is caused by a force majeure event, to avoid payment of stipulated penalties, Camoplast must submit the matter to this Court for resolution within twenty (20) business days after receiving written notice of the Plaintiff's position, by filing a petition for determination with this Court.  Once Camoplast has submitted this matter to this Court, the Plaintiff shall have twenty (20) business days to file its response to said petition.  If Camoplast submits the matter to this Court for resolution and the Court determines that the delay or impediment to performance has been or will be caused by circumstances beyond the control of Camoplast, including any entity controlled by Camoplast, and that Camoplast could not have prevented the delay by the exercise of due diligence, Camoplast shall be excused as to that event(s) and delay (including stipulated penalties), for a period of time equivalent to the delay caused by such circumstances.

28.     Camoplast shall bear the burden of proving that any delay of any requirement(s) of this Consent Decree was caused by or will be caused by circumstances beyond its control, including any entity controlled by it, and that Camoplast could not have prevented the delay by the exercise of due diligence.  Camoplast shall also bear the burden of proving the duration and extent of any delay(s) attributable to such circumstances.  An extension of one compliance date

11

based on a particular event may, but does not necessarily, result in an extension of a subsequent compliance date or dates.

29.     Unanticipated or increased costs or expenses associated with the performance of Camoplast's obligations under this Consent Decree shall not constitute circumstances beyond the control of Camoplast, or serve as a basis for an extension of time under this Part.  However, failure of a permitting authority to issue a necessary permit in a timely fashion is an event of Force Majeure where Camoplast has taken all steps available to it to obtain the necessary permit including but not limited to:

        (a).    submitting a timely and complete permit application; and

        (b).    responding to requests for additional information by the permitting authority in a timely fashion.

30.     As part of the resolution of any matter submitted to this Court under this Part VIII, the parties by agreement, or this Court, by order, may in appropriate circumstances extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of any delay or impediment to performance agreed to by the Plaintiff or approved by this Court.  Camoplast shall be subject to stipulated penalties for the failure thereafter to complete the work in accordance with the extended or modified schedule.

## IX.  DISPUTE RESOLUTION

31.     The dispute resolution procedure provided by this Part IX shall be available to resolve all disputes arising under this Consent Decree, except as otherwise provided in Part VIII regarding Force Majeure.

32.     The dispute resolution procedure required herein shall be invoked upon the giving of written notice by one of the parties to this Consent Decree to another advising of a dispute pursuant to this Part IX.  The notice shall describe the nature of the dispute, and shall state the noticing party's position with regard to such dispute.  The party receiving such a notice shall acknowledge receipt of the notice and the parties shall expeditiously schedule a meeting to discuss the dispute informally not later than fourteen (14) days from the receipt of such notice.

33.     Disputes submitted to dispute resolution shall, in the first instance, be the subject of informal negotiations between the parties.  Such period of informal negotiations shall not extend beyond thirty (30) calendar days from the date of the first meeting between representatives of the Plaintiff and Camoplast, unless the parties' representatives agree to shorten or extend this period.

34.     In the event that the parties are unable to reach agreement during such informal negotiation period, the Plaintiff shall provide Defendants with a written summary of its position regarding the dispute.  The position advanced by the Plaintiff shall be considered binding unless, within forty-five (45) calendar days of Defendants' receipt of the written summary of the Plaintiff's position, Defendants file with this Court a petition which describes the nature of the dispute, and includes a statement of Defendants' position and any supporting data, analysis, and/or documentation relied on by Defendants.  The Plaintiff shall respond to the petition within forty-five (45) calendar days of filing.

35.     Where the nature of the dispute is such that a more timely resolution of the issue may be required, a party to the dispute may file a motion with the Court seeking to modify the time periods set out in this Part IX.

36.     As part of the resolution of any dispute submitted to dispute resolution, the parties, by agreement, or this Court, by order, may, in appropriate circumstances, extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of dispute resolution.  Defendants shall be liable for stipulated penalties for their failure thereafter to complete the work in accordance with the extended or modified schedule.

## X.  GENERAL PROVISIONS

37.     Effect of Settlement.  This Consent Decree is not a permit; compliance with its terms does not guarantee compliance with any applicable federal, state or local laws or regulations.

38.      Resolution of Claims.  Satisfaction of all of the requirements of this Consent Decree constitutes full settlement of and shall resolve all past civil and administrative liability of Defendants to the Plaintiff for the violations alleged in the United States' Complaint and all civil and administrative liability of the Defendants for any violations at the Facility based on facts and events that occurred during the relevant time period under the following statutory and regulatory provisions:  (a) Section 112(g) of the Act, 42 U.S.C. § 7412(g); and (b) National Emission Standards for Hazardous Air Pollutants, 40 C.F.R. Part 63, Subpart MMMM, pursuant to Sections 112(d) and 112(g) of the Act.  For purposes of this Consent Decree, the "relevant time period" shall mean the period beginning when the United States' claims under the Act and regulations accrued through the date of entry of this Consent Decree.

39.     Other Laws.  Except as specifically provided by this Consent Decree, nothing in this Consent Decree shall relieve Defendants of the obligation to comply with all applicable

14

federal, state and local laws and regulations.  Subject to Paragraph 38, nothing contained in this Consent Decree shall be construed to prevent or limit the United States' or KDHE's rights to obtain penalties or injunctive relief under the Act or other federal, state or local statutes or regulations, including but not limited to, Section 303 of the Act, 42 U.S.C. § 7603.

40.    Third Parties.  Except as otherwise provided by law, this Consent Decree does not limit, enlarge or affect the rights of any party to this Consent Decree as against any third parties. Nothing in this Consent Decree should be construed to create any rights, or grant any cause of action, to any person not a party to this Consent Decree.

41.    Costs.  Each party to this Consent Decree shall bear its own costs and attorneys' fees through the date of entry of this Consent Decree.

42.    Public Documents.  All information and documents submitted by the Defendants to the Plaintiff pursuant to this Consent Decree shall be subject to public inspection, unless subject to legal privileges or protection or identified and supported as business confidential by the Defendants in accordance with 40 C.F.R. Part 2.  Camoplast has previously provided protected documents to Plaintiff and such documents shall retain their confidential status. This provision shall survive termination of the Consent Decree.

43.    Public Comments - Federal Approval.  The parties agree and acknowledge that final approval by the United States and entry of this Consent Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, an opportunity for public comment, and consideration of any comments.  The United States reserves the right to withdraw or withhold consent if the comments regarding this Consent Decree disclose facts or considerations which indicate that this Consent Decree is

15

inappropriate, improper or inadequate.  The Defendants consent to the entry of this Consent Decree.

44.     <u>Notice</u>.  Unless otherwise provided herein, notifications to or communications with the United States, EPA, or the Defendants shall be deemed submitted on the date they are postmarked and sent either by overnight receipt mail service or by certified or registered mail, return receipt requested.  Except as otherwise provided herein, when written notification to or communication with the United States, EPA, or the Defendants is required by the terms of this Consent Decree, it shall be addressed as follows:

As to the United States:

Assistant Attorney General
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611

As to the EPA:

Richard Tripp/Kevin Barthol
Air Permitting and Compliance
U.S. Environmental Protection Agency
901 North 5th Street
Kansas City, Kansas 66101

As to Caterpillar, Inc.:

Robert J. Lambrechts
Lathrop & Gage
2345 Grand Boulevard

16

Suite 2800
Kansas City, Missouri 64108-2684

As to Camoplast Rockland, LTD:

David M. Traster
Foulston, Siefkin
1551 North Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466

45.    Change of Notice Recipient.  Any party may change either the notice recipient or

the address for providing notices to it by serving all other parties with a notice setting forth such

new notice recipient or address.

46.    Modification.  There shall be no modification of this Consent Decree without

written agreement of all the parties.  There shall be no material modification of this Consent

Decree without the written agreement of the parties and by Order of the Court.  Prior to complete

termination of the requirements of this Consent Decree pursuant to Paragraph 49, the parties may,

upon motion to the Court, seek to terminate provisions of this Consent Decree.

47.    Continuing Jurisdiction.  The Court retains jurisdiction of this case after entry of

this Consent Decree to enforce compliance with the terms and conditions of this Consent Decree

and to take any action necessary or appropriate for its interpretation, construction, execution, or

modification.  During the term of this Consent Decree, any party may apply to the Court for any

relief necessary to construe or effectuate this Consent Decree.

## XI.  TERMINATION

48.    This Consent Decree shall be subject to termination upon motion by any party

after the Defendants satisfy all requirements of this Consent Decree and Camoplast has operated

the Facility in compliance with the emission limits, for a period of five (5) years from the date of

start up of the RTO.   At such time, if the Defendants believe that they are in compliance with the

17

requirements of this Consent Decree, and have paid the civil penalty and any stipulated penalties required by this Consent Decree, then the Defendants shall so certify to the Plaintiff, and unless the Plaintiff objects in writing with specific reasons within forty-five (45) days of receipt of the certification, the Court shall order that this Consent Decree be terminated on Defendants' motion. If the United States objects to the Defendants' certification, then the matter shall be submitted to the Court for resolution under Part IX ("Dispute Resolution") of this Consent Decree.  In such case, the Defendants shall bear the burden of proving that this Consent Decree should be terminated.

So entered in accordance with the foregoing this 12th day of June, 2006.


s/ J. Thomas Marten
United States District Court Judge
District of Kansas

THE UNDERSIGNED enter into this Consent Decree in the matter of
United States et al. v. Caterpillar, Inc. and Camoplast Rockland, LTD


FOR PLAINTIFF, UNITED STATES OF AMERICA:



**s/Ellen M. Mahan**                                    Date 2/13/06
Ellen M. Mahan
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611



**s/Julie M. Van Horn**                                 Date 3/27/06
Julie M. Van Horn
By Special Appointment as a
Department of Justice Attorney
United States Environmental Protection Agency
901 North Fifth Street
Kansas City, Kansas 66101
Telephone (913) 551-7889
Fax (913) 551-7925
vanhorn.julie@epa.gov

THE UNDERSIGNED enter into this Consent Decree in the matter of
United States <u>et al</u>. v. Caterpillar, Inc. and Camoplast Rockland, LTD


ERIC F. MELGREN
UNITED STATES ATTORNEY


By **s/Emily B. Metzger**                                    Date 4/11/06
EMILY METZGER
ASSISTANT UNITED STATES ATTORNEY
1200 Epic Center
301 North Main Street
Wichita, Kansas 67212
(316) 269-6481
Fax (316) 269-6484
emily.metzger@usdoj.gov
Kansas Supreme Court Number 10750

THE UNDERSIGNED enter into this Consent Decree in the matter of
United States et al. v. Caterpillar, Inc. and Camoplast Rockland, LTD

FOR U.S. ENVIRONMENTAL PROTECTION AGENCY:

**s/Walker B. Smith**                                    Date 3/31/06
Walker B. Smith
Director
Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

**s/James B. Gulliford**                                 Date 3/13/06
James B. Gulliford
Regional Administrator
U.S. Environmental Protection Agency
Region 7
901 North 5th Street
Kansas City, Kansas 66101

**s/David Cozad**                                        Date 3/9/06
Martha R. Steincamp
Regional Counsel
U.S. Environmental Protection Agency
Region 7
901 North 5th Street
Kansas City, Kansas 66101

21

THE UNDERSIGNED enter into this Consent Decree in the matter of
United States <u>et al</u>. v. Caterpillar, Inc. and Camoplast Rockland, LTD

FOR THE DEFENDANT CATERPILLAR, INC.:

**s/Laurie J. Huxtable**                    Date 2/20/06

THE UNDERSIGNED enter into this Consent Decree in the matter of
United States et al. v. Caterpillar, Inc. and Camoplast Rockland, LTD


FOR THE DEFENDANT CAMOPLAST ROCKLAND, LTD.:


**s/Ivan J. Warmuth**                                          Date 2/14/06
Ivan J. Warmuth
Vice President and General Manager
Camoplast Traction Group